IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| MARK M. M.,<br><br>                  Plaintiff,<br><br>vs.<br><br>ANDREW SAUL, Commissioner of<br>Social Security,<br><br>                  Defendant. | CV 19-107-M-KLD<br><br><br>ORDER |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review

of a decision by the Commissioner of Social Security denying his application for

disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §

401 et seq.

## I.   **Procedural Background**

Plaintiff filed an application for disability insurance benefits on August 2,

2017, alleging disability since July 1, 2012 based on multiple physical and mental

impairments. (Doc. 5 at 290). Plaintiff later amended his alleged onset date to

March 23, 2016. (Doc. 5 at 20, 45). Plaintiff's claim was denied initially and on

reconsideration, and by an ALJ after an administrative hearing. (Doc. 5 at 217-229;

19-34). The Appeals Council denied Plaintiff's request for review, thereby making

the ALJ's decision dated December 3, 2018, the agency's final decision for

purposes of judicial review. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II.   Legal Standards

### A.   Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. See *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible for more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to

2

the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

### B.    Disability Determination

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) he suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). See also *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act.

At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three.

At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, he must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's

residual functional capacity is a critical part of steps four and five of the sequential evaluation process.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

## III.   <u>Discussion</u>

The ALJ followed the five-step sequential evaluation process in evaluating Plaintiff's claim. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of March 23, 2016. (Doc. 5 at 23). At step two, the ALJ found that Plaintiff did not have any severe mental impairments, but had the following severe physical impairments: fibromyalgia;

degenerative disc disease of the cervical, thoracic, and lumbar spine; osteoarthritis of both shoulders, both knees, both hips, and the right hand; rotator cuff tear in the left shoulder; and obesity. (Doc. 5 at 23). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments, 20 C.F.R. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1. (Doc. 5 at 25).

The ALJ then found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> [H]e can be on his feet a range of 4-6 hours in an eight-hour day; sit for six hours in an eight-hour day; and lift 20 pounds on an occasional basis and 10 pounds on a frequent basis. He can occasionally push and pull with the bilateral upper extremities, but only within the weight limits already established; and can occasionally reach overhead, but only "light" weights, defined as one pound or less. He can occasionally climb stairs and ramps; never climb ladders, ropes, and scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. He must avoid concentrated exposure to extreme cold and vibrations.

(Doc. 5 at 26). At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (Doc. 5 at 32). Proceeding to step five, the ALJ found based on the vocational expert's testimony that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform. (Doc. 5, at 32-33).

Plaintiff does not challenge the ALJ's evaluation of his mental impairments, and does not argue the ALJ should have incorporated any mental limitations into the residual function capacity assessment. Plaintiff focuses instead on the ALJ's evaluation of his physical impairments, and raises three issues on appeal. First, Plaintiff maintains the ALJ erred by not giving more weight to the opinion of consultative examiner Dr. David Payne. Second, Plaintiff argues the ALJ did not provide clear and convincing reasons for discounting his testimony as to the extent of his upper extremity limitations. Third, Plaintiff argues the ALJ erred by relying on vocational expert testimony elicited in response to an incomplete hypothetical.

### A.    Medical Opinion Evidence

On November 21, 2017, Dr. David Payne conducted a consultative orthopedic examination during which he assessed Plaintiff's complaints of "[e]ntire body part pain." (Doc. 5 at 957). Dr. Payne examined Plaintiff's neck, thoracolumbar spine, and extremities; performed a neurovascular examination; and reviewed x-rays of Plaintiff's lumber and cervical spine. (Doc. 5 at 959-962). Dr. Payne also completed a functional assessment. He found that Plaintiff could stand and walk for four hours in an eight-hour workday, and sit for six hours in an eight-hour workday. He further found that Plaintiff could not lift and carry due to a disc translation, and was unable to bend, crouch, kneel, crawl, stoop, climb, balance,

walk on uneven terrain, or work at heights. He stated that Plaintiff had no overhead restrictions and unlimited use of his hands for fine and gross manipulation, but could "only occasionally do things with his hands." (Doc. 5 at 962).

Plaintiff characterizes Dr. Payne as a treating physician and argues the ALJ should have given his opinion more weight. Plaintiff argues the ALJ erred by not incorporating the standing/walking, lifting/carrying, and upper extremity limitations identified by Dr. Payne into the residual functional capacity assessment.

Contrary to Plaintiff's characterization, Dr. Payne was not a treating physician. Rather, he was a consultative physician who examined Plaintiff at the request of the Social Security Administration (SSA). (Doc. 5 at 957). Under the SSA regulations applicable to claims filed before March 27, 2017, this distinction would have been significant because of the deference given to opinions provided by treating physicians under the so-called "treating physician rule." See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(1) (providing that the medical opinion of a treating source as to "the nature and severity of [a claimant's] impairments" is entitled to "controlling weight," where the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record."). For all claims filed after March 27,

2017, however, the SSA has amended the regulations regarding evaluation of medical opinion evidence to eliminate the treating physician rule.

Under the new regulations, the ALJ "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017). *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017). These regulations do away with the traditional hierarchy between treating, examining, and non-examining physicians, and instead direct the ALJ to consider all medical opinions and prior administrative medical findings, and evaluate their persuasiveness using several listed factors. 20 C.F.R. §§ 404.1520c(a), 416.920(a). Those factors include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c), 416.920(c). The two most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920(a).

The regulations require the ALJ to articulate how persuasive he finds all of the medical opinions and prior administrative medical findings, and set forth specific "articulation requirements" for the ALJ's evaluation of the medical opinion evidence. 20 C.F.R. §§ 404.1520c(b), 416.920(b). When one medical

source provides multiple opinions, the ALJ is not required to articulate how he "considered all of the factors for all of the medical opinions" and will instead articulate how he considered those opinions "together in a single analysis using the factors" listed above. 20 C.F.R. §§ 404.1520c(b)(1), 416.920(b)(1). Because supportability and consistency are the most important factors, the ALJ must explain how he considered these factors in the decision. Generally, the ALJ is not required to explain how he considered the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920(b)(2). However, when the ALJ finds that two or more medical opinions are equally well-support and consistent with the record but are not exactly the same, he must articulate how he "considered the other most persuasive factors." 20 C.F.R. §§ 404.1520c(b)(3), 416.920(b)(2).

While these regulations eliminate the hierarchy between treating, examining, and non-examining medical sources, the ALJ must still provide legally sufficient reasons supported by substantial evidence for finding a medical opinion unpersuasive. See e.g. *Beason v. Saul*, 2020 WL 606760 *3 (C.D. Cal. Feb. 7, 2020).

Because Plaintiff filed his claim on August 1, 2017, the amended regulations apply in this case. Thus, the Court must determine whether the ALJ properly evaluated the persuasiveness of Dr. Payne's opinion using the factors set forth

above. See e.g. *Ryan L.F. v. Commissioner of Social Security,* 2019 WL 648560

*3-4 (D. Or. Dec. 12, 2019).

The ALJ considered Dr. Payne's opinion, but found it unpersuasive for two

reasons: (1) it was unsupported by his own examination findings and the

examination findings of Plaintiff's other healthcare providers; and (2) it was

inconsistent with Plaintiff's activities. The extent of the ALJ's discussion of the

supportability and consistency factors reads as follows:

> The undersigned finds the opinion of Dr. Payne unpersuasive. Dr. Payne
> opined the claimant cannot lift, carry, bend, crouch, kneel, crawl, stoop,
> climb, or balance, and has no overhead reaching limitations. The
> undersigned finds Dr. Payne's opinion unsupported by the examination
> findings and treatment of Dr. Mitchell, [Nurse Practitioner] Lewis, Dr.
> Keehn, and Dr. Yung, including Dr. Payne's findings, as documented above.
> Also, the undersigned finds Dr. Payne's opinion inconsistent with
> someone who played golf twice per month, did his own shopping and did
> not report any problems lifting or carrying any groceries, cared for himself
> and his three dogs, and traveled to Thailand and Canada.

(Doc. 5 at 31). Although the ALJ ostensibly addressed the "supportability" and

"consistency" of Dr. Payne's opinion as required under the amended regulations,

he did not do so in any meaningful way.

As to "supportability," the ALJ simply stated that Dr. Payne's opinion was

unsupported by examination findings and treatment records documented elsewhere

in his decision, but did not specify what records he was referring to, or how those

examination findings failed to support Dr. Payne's opinion. The ALJ's vague

reference to examination findings and medical records "as documented above" is not a sufficiently specific reason for finding Dr. Payne's opinion unpersuasive.

The Ninth Circuit has required an ALJ to link purportedly inconsistent evidence with the discounted medical opinion. See *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988). The ALJ's analysis of Dr. Payne's opinion falls short of "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751.

Although it is not entirely clear, it appears the ALJ may have been referencing the examinations findings and medical records he cited in his discussion of Plaintiff's subjective testimony. In discounting Plaintiff's testimony that he needed a cane to walk, the ALJ cited a handful of treatment notes from Dr. Richard Mitchell, Dr. Edward Keen, Dr. Kar-Wai Yung, and Nurse Practitioner Lewis. (Doc. 5 at 29). Dr. Mitchell and Dr. Keen are both mental health care providers, which means they did not treat or evaluate Plaintiff for the physical impairments evaluated by Dr. Payne. In discussing Plaintiff's subjective testimony, the ALJ noted that Dr. Mitchell observed during a mental status examination in August 2018 that Plaintiff's gait was normal. (Doc. 5 at 29, 1282). The ALJ also cited Dr. Keen's general observation during a mental evaluation in November 2017

12

that Plaintiff's "posture and gait were normal." (Doc. 5 at 29, 833). The Court fails to see how the fact that Plaintiff's mental health care providers twice described him as presenting with a normal gait contradicts the functional limitations set forth in Dr. Payne's opinion, particularly his assessment of Plaintiff's upper extremity limitations.

The ALJ also cited a treatment note from Dr. Kar-Wai Yung, who examined Plaintiff on February 26, 2016 for complaints of right knee pain. (Doc. 5 at 29, 741). Dr. Yung similarly described Plaintiff's gait as steady with no assistive device. (Doc. 5 at 29, 742). Dr. Yung did not evaluate Plaintiff's upper extremities, however, and did not assess any of his functional limitations. As to Nurse Practitioner Lewis, the ALJ cited a November 2017 treatment note reflecting that Plaintiff has 5/5 muscle strength in all four quadrants and walked unassisted with a steady gait. (Doc. 5 at 29, 904). As for Dr. Payne's own examination findings, the ALJ noted when evaluating Plaintiff's subjective testimony that Dr. Payne found Plaintiff had full pain-free range of motion in his hips and both lower extremities. (Doc. 5 at 29, 960-61). While these examination findings support the ALJ's rejection of Plaintiff's testimony that his was so impaired that he needed a cane to ambulate, the ALJ did not explain how they made Dr. Payne's assessment of Plaintiff's upper extremity limitations any less persuasive.

13

The second reason provided by the ALJ for finding Dr. Payne's opinion unpersuasive is also problematic. Addressing the "consistency" factor, the ALJ the found Dr. Payne's opinion "inconsistent with someone who played golf twice per month, did his own shopping and did not report any problems lifting or carrying any groceries, cared for himself and his three dogs, and traveled to Thailand and Canada." The ALJ's general statement that Dr. Payne's opinion was inconsistent with Plaintiff's activities is lacking the requisite specificity and is not enough, by itself, a sufficient basis for finding Dr. Payne's opinion unpersuasive.

At his administrative hearing on October 2018, Plaintiff testified that he had not golfed since July or August 2017. (Doc. 5 at 64). Plaintiff explained that even before then, he golfed only once or twice a month, wore knee braces, and was sometimes able to complete five or ten holes but never finished the full eighteen. (Doc. 5 at 64). Plaintiff further testified that he went to Thailand for two-and-a-half weeks in March 2016, and took muscle relaxers and slept for most of the flight. He stated that he used a wheelchair in the airports, and a cane and braces while walking. (Doc. 5 at 64). Plaintiff indicated that he goes grocery shopping with his sister roughly twice a week. (Doc. 5 at 62, 356). Considered in context, it is not clear from the record that Plaintiff's reported, largely intermittent activities so contradicted Dr. Payne's opinion that they provided a sufficient basis for the ALJ

14

to find his functional assessment unpersuasive. The Court concludes the ALJ did not provide legally sufficient reasons supported by substantial evidence for findings Dr. Payne's opinion.

To the extent the ALJ erred by discounting Dr. Payne's opinion that Plaintiff could only stand and walk for four hours out of an eight-hour workday, the Commissioner argues any error was harmless. Dr. Payne found that Plaintiff could stand and walk for four hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (Doc. 5 at 962). The ALJ accepted that Plaintiff could sit for six hours in an eight-hour workday, but otherwise deviated from Dr. Payne's assessment in finding that Plaintiff could "be on his feet" for four to six hours in an eight-hour workday. (Doc. 5 at 26). The ALJ identified six light-level jobs existing in significant numbers in the national economy that an individual with Plaintiff's age, education, work experience, and residual functional capacity would be able to perform. (Doc. 5 at 33). The vocational expert testified that four of those jobs could be performed by an individual limited to four hours of standing or walking, and stated those jobs existed in significant numbers in the national economy even when accounting for eroding effect of such a standing/walking limitation. (Doc. 5 at 97, 99-100). Thus, the Court agrees that the ALJ's error in discounting this portion of Dr. Payne's opinion was harmless. See *Molina v. Astrue*, 674 F.3d 1104,

1115 (9th Cir. 2012) (holding that "an ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination").

The same cannot be said, however, for Dr. Payne's opinion as to Plaintiff's upper extremity limitations. The light-level jobs identified by the ALJ at step-five all require the ability to lift and carry 10 pounds frequently and 20 pounds occasionally. In addition, while Dr. Payne stated that Plaintiff could only use his hands occasionally, the vocational expert's testimony was in response to a hypothetical that did not include any hand limitations and included the ability to occasionally push and pull with both upper extremities "within the weight limits already established," which presumably meant up to 20 pounds. (Doc. 5 at 96). Even the non-examining state agency physicians found that Plaintiff could do "no push/pull" with both upper extremities. (Doc. 5 at 192, 207). For these reasons, the Court finds this case must be remanded for the ALJ to reevaluate the persuasiveness of Dr. Payne's opinion.

**B.    Subjective Symptom Testimony**

Plaintiff argues the ALJ did not provide clear and convincing reasons for discrediting his testimony regarding his upper extremity limitations. The Court agrees.

The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. If the claimant meets this initial burden, at step two the ALJ may discredit the claimant's subjective symptom testimony about the severity of his symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

Here, the ALJ found that Plaintiff met his initial burden because he produced evidence of medically determinable impairments that could reasonably be expected to cause his alleged symptoms. The ALJ then found that Plaintiff's subjective statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical and other evidence in the record. (Doc. 5 at 29).

At his administrative hearing, Plaintiff testified that he could lift and carry no more than ten pounds. (Doc. 5 at 81). The ALJ discounted Plaintiff's testimony that he could not lift and carry more than 10 pounds for two reasons. First, the ALJ found this aspect of Plaintiff's testimony was not consistent with evidence showing

17

that he "golfed, did his own shopping without any reported assistance with the groceries, vacuumed, and cared for his three dogs." (Doc. 5 at 30). The ALJ cited Google for the proposition that "an average golf bag with clubs weighs 20-45 pounds." (Doc. 5 at 30).

As set forth above, however, Plaintiff testified that he had not been golfing in more than a year, and before that had only gone once or twice a month. Plaintiff explained that he wore knee braces while golfing and was not able to complete the full eighteen holes. Significantly, the ALJ did not ask Plaintiff whether he carried his own golf bag or used a golf cart, and the record is silent on this point. While the ALJ is entitled to draw reasonable inferences from Plaintiff's activities, for the ALJ to infer that Plaintiff carried a golf bag weighing between 20 and 45 pounds is tantamount to speculation. Likewise, absent any additional detail, Plaintiff's testimony that he went to the grocery store with his sister approximately twice a week is consistent with his testimony that he could not lift and carry more than ten pounds. Nor is there any evidence suggesting that feeding and walking his three small dogs (Doc. 5 at 354) or vacuuming involved lifting and carrying more than ten pounds. Although the activities listed by the ALJ could contradict Plaintiff's testimony regarding his inability to lift and carry more than ten pounds, the ALJ did not elicit any details about these activities that would support such a finding.

Second, the ALJ noted that notwithstanding "ample evidence documenting [Plaintiff's] restricted upper extremity ranges of motion," there was "no evidence of any recommended lifting or carrying restrictions by any treating medical providers." (Doc. 5, at 30). But unlike Dr. Payne, Plaintiff's these medical sources did not provide a functional assessment of Plaintiff's physical abilities and limitations. Thus, it is not surprising that their treatment notes did not identify any specific lifting and carrying restrictions. Rather, consistent with Plaintiff's testimony, their treatment notes reflect that Plaintiff had limited range of motion in his upper extremities, complained of upper extremity pain and numbness, and reported having difficulty using his hands. (See e.g. Doc. 5 at 564, 566, 591, 975, 979, 1074). The fact that Plaintiff's treating medical providers did not specifically assess any lifting and carrying restrictions is not a clear and convincing reason for discounting Plaintiff's testimony that he was not able to lift and carry more than ten pounds.

### C.    Vocational Expert

Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes v. Bowen*, 881

19

F.2d 747, 756 (9ᵗʰ Cir 1989) (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9ᵗʰ Cir. 1982)). If the assumptions in the hypothetical are not supported by the record, then the vocational expert's testimony that the claimant could perform other work existing in the national economy has no evidentiary value. *Embrey*, 849 F.2d at 422.

As discussed above, the Court has determined that the ALJ did not provide adequate reasons for finding Dr. Payne's opinion unpersuasive or for discrediting Plaintiff's testimony as to his upper extremity limitations. These errors may have affected the ALJ's hypothetical, and in turn, the undermined the vocational expert's testimony that Plaintiff could perform other work existing in the national economy.

### D.    Remand

The errors discussed above require that this case be remanded. Plaintiff requests the Court remand this matter for an award of benefits, or in the alternative, for further administrative proceedings. The Ninth Circuit has directed district courts to remand for an immediate award of benefits only if: "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the

claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citations omitted).

Here, there are outstanding issues to be resolved. On remand, the ALJ should reevaluate Dr. Payne's opinion, Plaintiff's testimony, and the residual functional capacity assessment. Under the circumstances, and because there is substantial doubt based on the medical record as whole whether Plaintiff is in fact disabled, remand for further proceedings is appropriate.

## IV.    <u>Conclusion</u>

For the reasons discussed above,

IT IS ORDERED that the Commissioner's decision is REVERSED and this matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 29th day of April, 2020

_____
Kathleen L. DeSoto
United States Magistrate Judge